UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACATTE CONSTRUCTION COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMCO INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No.  12-cv-01472-JST<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Re: ECF No. 37 |

## I.     INTRODUCTION

Plaintiff Pacatte Construction Company, Inc. ("Plaintiff") has brought a Complaint ("Complaint") against Defendants AMCO Insurance Company ("AMCO") and Great American Assurance Company ("Great American") (collectively, "Defendants") for breach of contract and breach of the covenant of good faith and fair dealing, and seeking declaratory relief. Complaint, Exh. A. to ECF No. 1. Defendants have moved for summary judgment. ECF No. 37. After considering the moving papers, the arguments of the parties at the hearing held on March 6, 2013, and good cause appearing, the Court hereby GRANTS the motion for summary judgment in its entirety.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    The Construction

In July 2000, Plaintiff purchased a General Commercial Liability policy from AMCO ("AMCO GCL Policy"). Complaint at ¶ 4; Exh. 1 to Declaration of Beverly Dettman ("Dettman Decl."), ECF No. 39-2. About two years later, Plaintiff entered into a contract with Marigold LLC ("Marigold") to construct a building in Sebastapol, California (the "Basso Building"). Exh. 1 to

Declaration of Mark Bonino ("Bonino Decl."), ECF No. 42. According to the contract, Plaintiff would build according to the plans or as directed by the owner, and the owner took responsibility to determine that work was performed as required under the contract. Id.

During the final month of construction, Plaintiff's CEO James Pacatte met with the owner and city officials to discuss his concerns that the grade of the entrances to the building did not comply with the ADA. Declaration of James L. Pacatte ("Pacatte Decl."), at ¶¶ 6 & 7, ECF No. 48-2. Nonetheless, construction was completed at the owner's direction in 2003. Id. at ¶ 7; Exhs. 2 & 3 to Bonino Decl.

Plaintiff states in its opposition that Marigold remodeled the building in 2007, and that Plaintiff was not involved in that work. Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment ("Opp."), ECF No. 48, at 3:5-13.

In July 2008, Plaintiff purchased a Commercial Umbrella ("Umbrella") policy from AMCO, and also obtained coverage from Great American pursuant to a different GCL policy ("Great American GCL Policy"). Complaint at ¶¶ 4-5; Exhs. 1-3 to the Declaration of Jean M. Osborne ("Osborne Decl."), ECF No. 41.

**2. The Underlying Actions**

On June 30, 2009, Hollynn Delil filed a complaint (the "Delil Complaint") against Marigold in this district. Delil v. Marigold, LLC, Case No. 3:09-cv-02934- JSW ("the Delil Action"); Exh. 1 to Request for Judicial Notice ("RJN") in this case, ECF No. 38-1.[1] Ms. Delil brought two causes of action: (1) "Damages and Injunctive Relief for Denial of Full and Equal Access to a Public Accommodation" pursuant to California statutory provisions; and (2) "Violation of the Americans With Disabilities Act." Exh. 1 to RJN, at ¶¶ 1 & 21. According to the Delil Complaint, the Basso Building was not equally accessible to persons with wheelchairs and therefore failed to comply with state and federal disabled access laws. Id. at ¶ 2. Ms. Delil

---

[1] The Court takes judicial notice of this and other records in the Delil and Marigold actions. "[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases." United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); see also Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (quoting Parrino v. FHP, Inc., 146 F.3d 699, 705–06 (9th Cir.1998) (documents "may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them").

2

settled her claims against Marigold in 2010, and the case was dismissed. Delil Action, ECF Nos. 24 & 25. Marigold agreed to close the second floor of the Basso Building, as well as the restrooms, drinking fountain, and elevator. Exh. 2 to RJN in this case, ECF No. 38-2, at ¶10. Marigold also agreed to make various physical modifications to the first floor and pay $107,000 to Ms. Delil "for her alleged emotional distress, costs and attorneys' fees." Id. Marigold's attorney would later state in a letter to Plaintiff's attorney that "settlement of the [Delil] case was $107,000 plus the cost of repair with approximately $30,000 attributed to the emotional distress allegedly sustained by Delil, and the remaining $78,000 for costs and attorney fees." Exh. F to Umrein Decl.

Marigold, in turn, sued Plaintiff on December 16, 2010, in Sonoma County Superior Court, in a case titled Marigold, LLC v. Pacatte Construction Co., Inc., Case No. SVC-248805 (the "Marigold Action") for indemnity and contribution, to recover sums it paid to settle the Delil action. Id. The complaint included four causes of action: (1) Comparative Indemnity; (2) Contribution; (3) Implied Contractual Indemnity; and (4) Declaratory Relief. Id. at ¶¶ 13, 17, 19, & 21. Marigold alleged that Plaintiff's construction of the Basso Building violated state and federal disabled access laws, and therefore Plaintiff was liable for some or all of the settlement Marigold had paid to resolve the Delil action, as well as the cost of repairs required under the terms of the settlement. Id. at ¶¶14-23.

Plaintiff tendered defense of the Marigold action to AMCO on February 7, 2011. Exh. 3 to Dettman Decl., at AMCO 160-61. A week later, AMCO denied coverage. Exh. 4 to Dettman Decl. Plaintiff tendered a claim to Great American on February 9, and Great American denied that claim on March 23. Exhs. 4 & 8 to Osborne Decl. Plaintiff sought reconsideration of both determinations in March 2011, and again in October 2012, and on both occasions both insurers declined to revise their determinations. Exhs. 7-9 to Dettman Decl; Exhs. 10-13 to Osborne Decl.

Plaintiff agreed to settle the Marigold Action for $35,000, after paying a total of $152,144.22 in attorney's fees to defend against it. Pacatte Decl. at ¶ 8.

**3. The Terms of the Insurance Policies**

The two GCL policies have essentially identical language. Under the pertinent portions of

3

the GCL policies, Defendants undertook to "pay those sums that the [i]nsured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[2] Exh. 1 to Dettman Decl, at AMCO 571; Exh. 1 to Osborne Decl., at GA-CF-575. The policies state that the insurers "will have no duty to defend the [i]nsured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. Id. The policies only apply when bodily injury or property damage "is caused by an 'occurrence' during the policy period. Id. "Bodily injury" is defined in both GCL policies as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Exh. 1 to Dettman Decl., at AMCO 582 ; Exh. 1 to Osborne Decl., at GA-CF-589. "Occurrence" is defined in the policies as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Exh. 1 to Dettman Decl., at AMCO 584; Exh. 1 to Osborne Decl., at GA-CF-00591.

The policy period of the Great American GCL policy ran from July 15, 2008 to July 15, 2009. Exh. 1 to Osborne Decl., at GA-CF-525.

The AMCO Umbrella policy provides two pertinent forms of coverage. "Coverage A" applies only when the limits of the underlying insurance are exhausted. Exh. 2 to Dettman Decl., at AMCO 508. In this case, the underlying insurance is the AMCO GCL policy. "Coverage B" provides that "we will pay on behalf of the 'insured' damages the 'insured' becomes legally obligated to pay by reason of liability imposed by law or assumed under an 'insured contract' because of 'bodily injury,' 'property damage,' or 'personal and advertising injury' covered by this insurance which takes place during the Policy Period and is caused by an 'occurrence.'" Id. The basic policy's definition of "personal and advertising injury" includes "discrimination." Id. at AMCO 515. However, the Umbrella policy Plaintiff signed had a specific exclusion added for discrimination. Id. at AMCO 429 (discrimination exclusion under Coverage B "eliminates discrimination coverage from your policy which is a reduction of coverage") & AMCO 528 ("[i]t

---

[2] Both GCL policies contain provisions covering "personal and advertising injury," but Plaintiff does not argue that this provision applies. Neither does Plaintiff claim that "property damage" coverage is applicable.

4

is agreed that, with respect to Coverage B, all references in the policy to discrimination are deleted and no coverage is provided").

## B. Procedural Background

In February 2012, Plaintiff filed this Complaint against Defendants AMCO, Great Insurance Company, and Does I through V in Sonoma County Superior Court, alleging breach of contract and breach of the implied covenant of good faith and fair dealing, and seeking declaratory relief. SCV-25177. AMCO removed to this Court in May 2012, asserting that both named defendants are citizens of states other than California. Notice of Removal of Action Under 28 U.S.C. § 1441 ("Notice of Removal"), ECF. No. 1.[3]

On March 13, 2013, AMCO filed a motion for summary judgment, which this Court now considers.

## C. Jurisdiction

As stated in the Notice of Removal, Plaintiff is a California citizen, both named defendants are citizens of states other than California, and the amount in controversy exceeds $75,000. Jurisdiction is therefore proper pursuant to 28 U.S.C. § 1332(a) (federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States").

## D. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Summary judgment must be supported by "facts as would be admissible in evidence." Fed. R. Civ. Pro. 56(e). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential

---

[3] Pursuant to 28 U.S.C. § 1446(b)(2)(A), both defendants were required to join in the removal, but only AMCO did. However, a motion to remand based on "any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(b). Plaintiff has therefore waived its right to object to removal on this ground, and as discussed at II-C, *supra*, this Court has subject matter jurisdiction over this action.

element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." Id., 477 U.S. at 323. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). However, it is not the task "of the district court[] to scour the record in search of a genuine issue of triable fact," and the court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

In California, "[w]hen determining whether a particular policy provides a potential for coverage and a duty to defend, [the courts] are guided by the principle that interpretation of an insurance policy is a question of law." Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995). It is the insured's burden to establish that the claim potentially falls within the coverage promise. Id., 11 Cal. 4th at 16; see also Aydin Corp. v. First State Ins. Co., 18 Cal. 4th 1183, 1188 (1998) ("[t]he burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage.").

However, an insurer's duty to defend its insured against a lawsuit filed by a third party is broader than its duty to indemnify. Buss v. Superior Court of Los Angeles County, 16 Cal. 4th 35, 46, 65 (1997). "[T]he insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed." Id.; see also Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). Therefore, "[i]n a duty to defend case, an insurer moving for summary judgment 'must establish the absence of any . . . potential' for coverage, i.e., that the underlying complaint 'can by no conceivable theory raise a single issue which could bring it within the policy coverage.'" Cunningham v. Universal Underwriters, 98 Cal.App. 4th 1141, 1147 (2002) (quoting Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 300 (1993)). "There is no duty to defend if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage." Scottsdale Ins. Co. v. MV Transportation, 36 Cal. 4th 643, 655 (2005).

To prevail on a claim of breach of the covenant of good faith and fair dealing against an insurer, an insured must provide "proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, 'but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.'" Century Sur. Co. v. Polisso, 139 Cal. App. 4th 922, 949 (2006) (quoting Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co., 90 Cal. App. 4th 335, 346 (2001). Punitive damages are only available when an insured demonstrates that an insurer "committed oppression, fraud or malice," Cal. Civ. Code § 3294(a), and acted "in conscious disregard of the rights of the insured." Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 820 (1979).

## III.  DISCUSSION

Defendants move for summary judgment on the grounds that they had no obligation to defend the Marigold action since there was no potential coverage under either GCL policy or the Umbrella Policies, and that Plaintiff has failed to meet its burden of demonstrating a breach of the covenant of good faith and fair dealing. Alternatively, they seek partial summary judgment on the breach of the covenant claim and Plaintiff's claim for punitive damages.

### A.  Defendants' Duties to Defend under the GCL Policies

Defendants argue that the terms of both GCL policies, and the policy dates of the Great American policy, did not impose on them any duty to defend the Marigold action.

The GCL policies only obligated Defendants to defend actions seeking damages for "property damage" caused by an "occurrence." Defendants argue that there was no potential for coverage under the GCL policies because the act giving rise to liability was not an "occurrence," and because the Marigold and Delil actions did not seek damages for "bodily injury." Either argument, if valid, would establish that Defendants lacked a duty to defend under the GCL policies.

An insurer has no duty to defend when the insured's conduct does not constitute an "occurrence" as defined in the coverage policy. Delgado v. Interinsurance Exchange, 47 Cal. 4th 302, 308 (2009).

7

United States District Court
Northern District of California

1    Like most GCL policies, the polices at issue here define an "occurrence" as an "accident."
2    "[I]ntentional acts generally do not constitute an occurrence or an accident." 14 Couch on Ins. §
3    201:6. California courts adhere to this rule. In determining whether an act constitutes an
4    "occurrence" within the meaning of a standard GCL policy, the question is whether "[t]he acts
5    asserted to give rise to the underlying claimant's injuries were deliberate, regardless of whether
6    any harm was intended or expected to come of them." Quan v. Truck Ins. Exch., 67 Cal. App. 4th
7    583, 599 (1998). In the context of an accessibility claim, the acts asserted to give rise to the
8    claimant's injuries are the acts of the insured in constructing an inaccessible building. The fact
9    that an insured violated accessibility laws is not an "occurrence" within the meaning of a standard
10   GCL policy. Modern Development Co. v. Navigators Ins. Co., 111 Cal.App. 4th 932, 936 (2003);
11   Shelter Island v. St. Paul, 32 Fed. Appx. 243, 244 (9th Cir. 2002) (unpublished). Relying on this
12   law, Plaintiff argues that Defendants have failed to meet their burden of showing that there was a
13   potential for coverage under the GCL policies.

14   In its brief, Plaintiff raises three arguments. First, Plaintiff notes that in the cases cited
15   above, the claimant in the underlying action sued the insured directly, while in this situation, the
16   claimant sued Marigold, who then sought indemnity and contribution from Plaintiff. The Court
17   sees the distinction, but not the difference: had Ms. Delil joined Marigold and Plaintiff as co-
18   defendants in the same action, the question of Defendants' duty to defend would have been
19   resolved in exactly the same way. Plaintiff submits no argument why this fact, standing alone,
20   changes the analysis. Opp. at 11:18-12:15.

21   Second, Plaintiff argues that "in determining whether or not there is coverage under the
22   policies, the insured's intent is irrelevant." Opp. at 13:2-4. Plaintiff does not clearly explain what
23   it means by this.[4] In this area of law, courts do often point out that "[t]he insured's subjective
24   intent is irrelevant." Fire Ins. Exchange v. Superior Ct., 181 Cal. App. 4th 388, 392 (2010). What
25   courts mean by this is that it does not matter whether or not an insured subjectively intended to

---

[4] Plaintiff's arguments on this point are not entirely consistent. See, e.g., Opp. at 13:15-16 ("Pacatte's objective was to build an ADA compliant building").

8

cause harm. If the insured deliberately conducted an act which itself caused harm, it cannot claim that its action was an "accident" simply because it did not intend to cause harm. On the current facts, however, this point is unhelpful to Plaintiff.

Plaintiff's primary argument is that an "unforeseen happening" can constitute an "occurrence" within the meaning of a GCL policy. Plaintiff cites several cases in which courts contrasted deliberate acts from situations in which "some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." Merced Mut. Ins. Co. v. Mendez, 213 Cal. App. 3d 41, 50 (1989); see also St. Paul Fire and Marine Ins. Co. v. Superior Court 161 Cal App. 3d 1199, 1202-03 (1984); Upper Deck Company LLC v. Federal Insurance Company, 298 F. Supp. 2d 994, 1002 (S.D. Cal. 2002); Fire Ins. Exchange, 181 Cal. App. 4th at 393; Osborne Development Corp. v. First Specialty Insurance Corp., 2011 U.S. Dist. LEXIS 50448, at *18-35 (S.D. Cal. May 11, 2011). These cases do not help Plaintiff -- in all of them, courts found that the act giving rise to liability was deliberate and that no "accident" or "unforeseen happening" had occurred. In any event, the act giving rise to Plaintiff's potential liability in this case was not an unforeseen happening. It was Plaintiff's deliberate act in constructing the Basso Building.

Plaintiff points to two facts that it says constitute unforeseen happenings: the fact that Plaintiff wanted to construct an ADA-compliant building but was told to build according to Marigold's plans, and the fact that Marigold remodeled the building in 2007. Opp. at 13:14-17; 14:5-6.[5] Plaintiff was free to point to those facts in defending the Marigold action, since perhaps they decreased Plaintiff's potential liability for Ms. Delil's damages. But whatever liability Plaintiff *did* incur did not stem from an "accident," or from any "unforeseen happening." Plaintiff could only have been obligated to pay damages in the Marigold action because of injuries caused by its own deliberate acts in constructing the building in the manner that it did. Had Marigold succeeded in winning its action against Plaintiff at trial, it would not have been because an unforeseen happening. It could only have been because Plaintiff's deliberate act of constructing

---

[5] Plaintiff's brief fails to cite the evidence supporting its contention that the building was remodeled in 2007. The Court assumes *arguendo* that this fact is true since, even if it were, it would not change the result.

the Basso Building caused Ms. Delil harm.

Defendants are entitled to judgment as a matter of law that, even after construing the facts in the light most favorable to Plaintiff, the GCL policies provided no potential for coverage for the damages owed in the Marigold action, because that action did not seek damages for an "occurrence," within the meaning of the GCL policies. Therefore, the Court need not address Defendants' argument that that the Marigold complaint did not seek damages for a "bodily injury," and Great American's separate argument that the coverage dates of its policy did not include the date that Ms. Delil's alleged injury occurred.

### B. AMCO's Duty to Defend under the Umbrella Policy

Defendants also argue that AMCO properly determined that there was no potential coverage under the terms of the Umbrella policy, because of the specific exclusion in the policy for discrimination claims. Exh 2 to Dettman Decl., at AMCO 499. Plaintiff does not address this argument in its opposition brief, except to acknowledge that the Umbrella policy "is subject to a Discrimination Exclusion." Opp. at 5:14-15. The Court agrees that Plaintiff has failed to provide evidence to demonstrate that there is potential coverage under the Umbrella policy. Where the gravamen of an underlying complaint is illegal discrimination, a discrimination exclusion in an insurance policy eliminates any duty to defend that complaint. See Michaelian v. State Comp. Ins. Fund, 50 Cal. App. 4th 1093, 1106-07. Defendants argue, and Plaintiff does not dispute, that the gravamen of the Delil complaint is for illegal discrimination. See, e.g., Delil Complaint at ¶ 18 ("Defendants' actions and omissions to act constituted discrimination against Ms. Delil"); ¶ 19 (seeking recovery of costs "to enforce Ms. Delil's rights and to enforce provisions of the law . . . prohibiting discrimination against disabled persons"), & ¶ 29 ("Ms. Delil is being subjected to discrimination on the basis of disability in violation of [the ADA]"). Plaintiff's obligations under the Marigold settlement derive from this claim. Defendants therefore are therefore entitled to judgment as a matter of law that AMCO did not breach its duty to defend under the Umbrella policy.

### C. Breach of the Covenant of Good Faith and Fair Dealing

"It is clear that if there is no potential for coverage and, hence, no duty to defend under the

terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." Waller, 11 Cal. 4th at 136. Since the Court concludes that there was no potential for coverage under the policies, Defendants are entitled to judgment as a matter of law on Plaintiff's cause of action for breach of the covenant of good faith and fair dealing.

Moreover, even if Defendants had improperly denied coverage, it is still Plaintiff's burden to provide "proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, 'but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.'" Polisso, 139 Cal. App. 4th at 949 (2006) (quoting Chateau Chamberay Homeowners Ass'n, 90 Cal. App. 4th at 346.

Plaintiff's only argument for bad faith is that Defendants "took no notice of . . . [a] flaw on the face of the Marigold complaint" which Plaintiff believes relieve it of liability. Opp. at 19:4. Like the argument discussed at III-A, *supra*, the strength of Marigold's case against Plaintiff has nothing to do with Defendants' duty to defend. And it certainly does not satisfy Plaintiff's burden of proving that Defendants denied Plaintiff's claim in bad faith.

**D.     Preemption**

Finally, the Court addresses Plaintiff's argument that "[p]roperty owners have a non-delegable duty [to maintain an ADA-compliant building] and their right to seek indemnity is preempted by federal law." Opp. at 8:26-27. Even assuming this is true, it is irrelevant to Defendant's duty to defend the Marigold action. Plaintiff could have raised this preemption argument in defending itself from the Marigold action. But even assuming that the defense shielded Plaintiff from liability, Defendants were only required to defend those actions covered by the policies.

**E.     Punitive Damages**

Since the Court will grant summary judgment to Defendants on all of Plaintiff's causes of action, it need not address the question of whether Plaintiff is entitled to punitive damages.

/ / /

/ / /

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' motion for summary judgment on all of Plaintiff's causes of action.

**IT IS SO ORDERED**.

Dated: May 16, 2013

JON S. TIGAR
United States District Judge